from Ms. Epps representing Mr. Marshall. Thank you. See we've lost our thing. I want to argue issue number one which is whether the trial court abused its discretion in excusing the only African American juror in the absence of counsel and the accused and without a prior hearing. To be heard on whether or not a brief continuance might have sufficed to allow the juror to continue to proceed. You know you keep talking about it every now and then you throw in your brief and now you've just thrown it in here this what I call light motif of the fact that he was the only African American juror. But you're not raising any claims that relate to that really are you? Well we're relating that the defendants were prejudiced when the only African American juror was excused. And it's connected to whether or not the trial judge should have been a little bit more sensitive to that fact before he excused that juror without first allowing some input. Wait a minute did you you know were you were you not you were not the trial judge lawyer I'm sorry. No. No ma'am. The trial lawyer didn't make a point about judge you just getting ready to excuse the only black juror in this group. The juror was already excused at that point. All right but I mean an issue wasn't made about his happened. Counsel approached the bench and expressed great concern that the only African American on the jury had been excused. That was specifically raised when they approached the bench. And it was pointed out that the binary was a little thin on African Americans to begin with. So that only one ended up on the jury. And they were very concerned about that. So your claim is that you that your client had a constitutional right to have a black juror on that jury? No. I don't think that the law would support that claim. But I think that that claim is whether or not it is arbitrary to excuse jurors in the absence of counsel and the defense. And particularly so where the juror who is being excused is the only African American. Was he going to have to serve while ill or something? What would have happened differently had the judge called the lawyers and said the jurors called in and they're sick. I'm excusing the juror. You don't need a hearing at that point to evaluate whether the jurors actually able to come in. You don't have to require a doctor. The court has a lot of discretion in that regard. The court has a lot of discretion. But what you have here is an extremely lengthy trial. We're halfway through it. The juror has called in and said he is having some trouble with hypertension. The judge did not talk to the physician to ascertain how long the juror would be incapacitated. The juror told him that he was likely to be incapacitated for several days. To stay off his feet for a couple of days. Well, he's probably got to get on his feet to get to the courthouse, right? Well, the issue then is whether or not, I mean trials are continued in the middle all the time. It is not necessarily the most desirable way to conduct a trial. But we have competing interests here. We have the only African American on this jury. It is not clear that a brief continuance would not have allowed him to continue to serve. And the fact that he was uh without allowing the attorneys to question whether or not he could have continued to serve after a couple of days is what we are arguing is an abuse of discretion. Do you have any case law that supports this sensitivity that you urged today? That the judge should have been more discreet? Well, Batson is actually, although certainly it's different on its facts, but the underlying premise of Batson is that allowing peremptory challenges that are arbitrary where the prosecutor is unable to give a non-race based excuse for getting a juror off, that that leaves a lot of potential for discrimination. But this isn't a peremptory challenge. No, it is not. It's an actual reason. It is an actual reason. There's no one saying the judge is making this up or lying or anything like that. No, nobody's saying the judge is making it up or lying. And Batson advances the right of the potential juror, whereas this juror is not saying I was thrown off the jury when I was sick and not able. I mean, that's a unique thing that developed as a result of Batson. Well, you know, the jurors in Batson weren't coming in and saying that either. Ms. Epps, how do you articulate the expressed error of the judge? What error did the judge commit? I think he abused his discretion under the facts of this case in not holding a hearing and allowing the defense to present the notion that a brief continuance might have sufficed to allow the juror to continue to serve. Are you going to discuss your sentencing on your case? I had not planned to. Was there a particular issue that the court, there are several sentencing issues. Was there a particular... You're not going to argue them? I had not planned to argue them, no ma'am, but I certainly can't. In your case, in your... 145 years, I mean, errors are kind of harmless, aren't they? Well, it depends on, you know, whether you deem this to be a constitutional error, whether it's harmless or not. Okay, Ms. Epps, you have a red light. Thank you very much. Thank you very much. Mr. Barrett, representing Mr. Keel. May it please the court, my name is Peter Barrett. I represent Mr. Keel. Your Honor, the error that was committed by the district court in not holding some kind of inquiry and not holding some kind of a hearing, allowing these lawyers to be heard on behalf of their clients, materially affected the client, Mr. Keel's rights. The situation is the court came in and treated the excuse of the juror and... Now, you concede, as Ms. Epps did, that the standard of review here is abuse of discretion. Your Honor, could you just please... Do you concede that the standard, concede or do you acknowledge, do you agree that the standard of review of this alleged error is abuse of discretion? It is an abuse of discretion, yes, Your Honor. Okay. Well, so that admits in and of itself that the district court had a lot of discretion in this case. It didn't really commit legal error. It's hard to see how the district court abused its discretion in making a decision on the moment to accept the word of the juror that he could not be on his feet for two or three days and that he had hypertension. How is it an abuse of discretion for the judge to accept the word of a juror under those circumstances? But Your Honor, of course, that's the point. When the court came in, the court had already made that decision in the absence of hearing from counsel for either side without any prior notice. The court came in and said, quote, I'm treating this as a housekeeping matter. I understand that, but I guess I'm repeating myself to say, how is that an abuse of discretion? You're saying it's an abuse of discretion not to hold a hearing. The abuse of discretion is the decision that he made, right, to dismiss the juror. And you're saying a legal error that he has a right or that your client had a right to a hearing? They had a right to make a record, Judge, and they should have made a record. The lawyers should have made a record when you allowed them to do that. They weren't denied the right to make a record, were they? Well, when they came in, the court said, I have excused the juror. Now, do you want to argue with the court's ruling? And I've spent some time before district judges. They don't like their rulings argued with by trial counsel at trial. But on the appeal, that trepidation that may be created by the district judge doesn't save you on appeal, though, from making an objection. Judge, and when they were finally allowed to speak, or when they finally asked to speak, the trial counsel got up and made the point that this was the only African-American juror, and that juror had been excused. And the court said, well, I know all that. And then he said, do you think, the court says, do you think that Mr. Nave is feigning illness? Well, the answer to the question, instead of, I think the trial counsel said, I don't know, and he said, no, I'm not questioning Mr. Nave's sincerity, or the court's sincerity, or their truthfulness. Don't you lose the case right there, then? I'm sorry. Once he says, no, I'm not questioning the factual basis for the excuse, why isn't that when the point at which this appeal is no longer viable? Because you have to show prejudice, and the prejudice depends upon if the juror was discharged without factual support or for a legally irrelevant reason. That's the standard for prejudice. And if he's conceding that there was factual support in his answer to the court, then, and it's not legally irrelevant, then you lose. Well, it's not sufficient. It was, in every one of the cases that the government cited, and in the cases that I, well, almost every case that the government cited, and the cases that I've read, in every one of those cases, the court had something before it, other than a brief conversation with the juror. Now, the juror said, well, they had a high blood pressure problem, and the judge had, excuse me, and the doctor said, stay off your feet for a few days. I mean, what is a few days? Is it more than two and less than five? I don't know. This was halfway into the trial. This is a critical juncture of the trial, and we're dealing with jury composition, something that people have fought hard from the beginning of this trial to, these men were on trial for their lives, Your Honor, and these men had fought, these- They fought for more than their lives. 142 years is more than that. Well, it's essentially the rest of their lives locked up, and that was clear from the get-go in this case. Do you have another issue? I do. It's ineffective assistance of counsel, Your Honor. There's no record in this case. There was never any record in this case. There's a lack of objections in the record, and especially on this matter. The fact that we're up here even arguing, even having to fight off an argument of plain error indicates exactly how serious it is. We don't- We usually save those for a later date. I am sorry? We usually save those for a later date, though, the 2255. I understand that, but if the record is sufficient, the court can entertain an argument of ineffective assistance of counsel. And articulate what his ineffectiveness was. The ineffectiveness is that there is a lack of a record. There's a lack of the lawyers making a record in this case so that we're not here arguing plain error on other issues that could have been brought up in this case. For the prejudice prong of ineffective counsel, you've got to argue that he was prejudiced by this ruling. And if we say there was no mistake and no error that the district court made in not holding a hearing, you lose on ineffectiveness, too. I mean, if we rule that the judge made no error, that disposes of your 2255 argument or your ineffective argument. Well, may I answer? Sure. It's our position that the court did make an error. It's a fundamental error at a critical juncture in this trial that had to do with jury composition. Okay. Thank you, Mr. Barry. Mr. Cleveland, representing the government. Good morning, Your Honors. Gaines Cleveland for the government, and may it please the court. Judge Girola properly exercised his authority to excuse the juror who called in sick. That authority is found in this court's decision in Bourgeois, cited in our brief at page 22. The judge asked if the juror could continue, and he said he could not. On the advice of the juror's doctor, Judge Girola properly excused the juror. When the judge told counsel, no one objected, and no one proposed any alternative. There was no one that had complained that the court had acted without consulting counsel. No one said the court should have allowed time for the juror to recover. The replacement of the juror did not cause prejudice as this court has expressed it, which is to be found only if the juror was discharged without factual support or for a legally irrelevant reason. That's found in this court's decision in Virgen Moreno, quoted in our brief at page 27. There's no basis for showing that a change in the composition of this jury would have any effect under the facts of this case, where the proof was so overwhelming. You have in this case proof from so many sources, including the totally uncontested proof on appeal of the cellular telephone tracking. These defendants, Keel and Marshall, were both based in the Mobile area, and you can follow their cellular telephone, Marshall in particular, to four of the bank robberies. You can actually see the cellular telephone moving to the vicinity of the bank, arriving at the same time as the bank robbery takes place, and then going back to the Mobile area. That is compelling proof. On one of those occasions, you've got both Keel and Marshall's telephones coinciding at the time of the bank robbery. But it's the government's position on whether it's a better practice to bring the lawyers in and maybe get the person on conference call with the court reporter for them to reiterate their situation and let them ask questions. There's one decision of this court would suggest that that is the better practice. Now, the authority is also there that the court has the discretion, that this is something that's entrusted to the district judge. Of course, in this case, no one asked for the brief continuance that Ms. Epps referred to. No one asked for a hearing, as both counsel have referred to. Although at that point, the person's already gone, and that's before the Supreme Court said that after a juror's discharged, you can bring them back for limited reasons. I don't know if this would be a limited reason to finish a trial anyway. So at that point, it was kind of the horses out of the barn, so to speak. Well, this was announced the morning of that trial day. So the impression one is left with, which is the judge talked to the juror that very morning, and it certainly would have been possible. It certainly was not futile for someone to object and ask the court to question the juror and whether he had been exposed to any sort of outside influences. So I don't think the situation in this case was trivial. Did you say this is the first day of the trial? No, it's not the first day. It's the first part of the trial day. So this was Ms. Epson and her brief suggestion at one point that there would have been a— How far into the trial? This was about midway through the trial. And how long did the trial last? About 10 days, if I recall. It started on June 30th and ended on July 14th. So Ms. Epson talks about, well, there are trends in the law in the Batson area. Well, this Court does not rule based on trends. This Court rules based on law, and the law does not support her position. There would have been a question about the fact that these defendants were facing an awful lot of time, and that's true. And let me make an observation on the sentencing. As to Marshall, who was the only one who raised the sentencing question on appeal, we have a table in our brief at page 60. And in that table, you can see that the four firearms counts that Marshall was subject to, a mandatory minimum of 25 years each, the judge was required to run those consecutively. So Marshall's sentence as to those accounts alone totaled 100 years. That's leaving aside entirely any of the contested sentencing issues that Ms. Epson raised on appeal. So you've got the harmlessness of this conduct on the part of the judge in excusing the juror, the judge acting well within his discretion. We ask this Court to affirm. Thank you, Mr. Cleveland. Ms. Epson, you have some time for rebuttal. I want to clarify the standard of review. When I said abuse of discretion, what I really intended to say, and maybe I didn't say it very clearly, is that there's not—there's no question that the judge properly found that the juror had called in sick. He did not, therefore, abuse his discretion. The question is whether or not he had a legally sufficient reason for excusing the juror as opposed to determining whether or not a continuance would have been appropriate at that point. That's a legal question, and, of course, the standard of review there would be quite different. We have a case that says car trouble is an okay reason because it means the juror has problems with future days. So if car trouble is a good enough reason to excuse a juror, then why isn't hypertension a good enough legal reason to excuse a juror? I'm not sure about the car case, but— You know it's in the briefs, right? I mean, it's a case. I don't remember the car case being in the brief, but I could certainly be wrong. There was the I didn't even so much as want to come to court excuse, but what you do not have coming together here is the—which is a little bit different from the other cases. You've got a combination of things that come together. You've got the absence of the defense and not being allowed to be heard. You have a situation where it's the only African-American juror, and you have a situation where had he not excused him without counsel not being there, they might could have kept that juror in. This was a long trial, and I don't think a couple of days would have really been— Well, the juror himself said that he didn't think that he could serve on the jury for this trial. I don't think that's— That's what my notes say, he said. I don't think that's exactly what he said. I think he said he couldn't continue for—had to stay off his feet for a couple of days is what the doctor told him. But— And avoid stress. Yeah, that's right. I don't think he said, in this case, avoid stress. Now, there is a case where they actually had locked the man down because he was so stressed out about the trial, and clearly under those circumstances, the man would not have been able to come back. And the—I think it just depends—and I would like to say one thing. Could I have just about one more second? I may be the only person in this courtroom—women were not allowed to serve on juries in Mississippi until 1968. I turned 21 in 1966, so I may be the only person in this courtroom who was excluded by law from serving on a jury, and I'm still a little miffed about it. Okay, well, thank you, Ms. Epps. I just wanted to point out that being excluded from a jury is important to people. No, we certainly accept that in full. We'll call the next—no, I believe Mr. Barrett, you have some time for a vote. Briefly, Your Honor, Mr.—the government lawyer, Mr. Cleveland, in his presentation to the court, cited to United States v. Bourgeois and United States v. Virginia Moreno. Virginia Moreno is easily distinguished from the case that's before the court today involving Mr. Keel. In that case, the court had a record. In this case, the court has no record. The court has a very short colloquy between the defense lawyers and the court with regard to what the judge said that the juror said. At that point, I don't know whether the—it's our position that it was necessary to further develop the record in order that a legally sufficient reason could be put upon the record so that we wouldn't be here arguing this today. The fact of the matter is, is that the counsel's failure at the trial court to make a record is what constitutes the problem with their representation in the trial court. In Virginia Moreno, the court had a record. The court had—the juror was still in court. There was a note. The Court of Appeals could look at the note. In this case, we have none of that. We don't have the opportunities that— The problem with your argument is that in order to make a record of the sort that you would like to have seen made, he would have had to have the juror come into the courtroom,  Not necessarily, Your Honor. How was he going to do it other than taking— The court identified in the record who the physician was. I note that a United States District Judge in the Southern District of Mississippi can probably get the physician to take his call, and he could simply ask, in the presence of counsel, could simply ask the physician and get some kind of medical diagnosis, get some kind of scientific medical basis for excusing the juror, and that would have been it. Something other than, he told me to be off my feet for a few days, which presumably is less than five, and the other thing was that he asked me if he could continue. Mr. Barrett, wouldn't you say that that is a supreme example of Monday morning quarterbacking when nobody suggested any sort of plan to the judge at the time, and now you are down here some year later saying, well, the court could have done this on the spur of the moment when nobody made any suggestions to him. That seems like you are not being very fair to the judge. Well, but isn't that the point on the ineffective assistance of counsel claim, Judge? That's another matter. The ineffective assistance of counsel claim is that they didn't make a record. When he said, do you have any questions about that, he should have said, yes, I have a question about that. I mean, that was the proper way to make the objection, or I want a mistrial, something, but we don't have that, Judge, and that is the ineffective assistance of counsel claim. It affects a substantial right, and this was at a critical juncture of the case. One thing about which there is no question, you've got a red light. Thank you. Thank you. Call the next case of the day.